**Raymond SNYDER, Petitioner,**

v.

**W. D. BLANKENSHIP et al.,
Respondents.**

**Civ. A. No. 79–0099–A.**

United States District Court,
W. D. Virginia.

July 16, 1979.

Raymond Snyder, pro se.

Guy W. Horsley, Jr., Asst. Atty. Gen., Richmond, Va., for respondents.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Petitioner Raymond Snyder, a prisoner at the Bland Correctional Center, brings this 42 U.S.C. § 1983 action against respondent W. D. Blankenship, the Superintendent at Bland, and respondent L. J. Baisden, the prison Food Service Manager. Jurisdiction is attained under 28 U.S.C. § 1343(3). Respondents have submitted a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and petitioner has replied with a motion for summary judgment supported by counteraffidavits. This court considers the matter now ready for disposition.

### I.

Petitioner Snyder alleges in his complaint that on January 14, 1978, while working in the prison kitchen, he fell on the slippery tile floor and hurt his back. Soapy water leaking from the dishwasher allegedly caused the fall. Petitioner states that he has been unable to work since his accident, as he has suffered permanent nerve dam-

age resulting in a painful soreness of the lower back and right hip.

Petitioner avers that the respondents have subjected him to gross negligence and have thereby violated his constitutional right to be free from cruel and unusual punishment as proscribed by the Eighth Amendment. Petitioner claims that he has been forced to work in the prison kitchen under hazardous conditions known to exist by the respondents, who have deliberately disregarded the safety of prisoners working in the kitchen. Petitioner says that the slippery conditions have existed since early 1977 and that another inmate fell on the slick area in March, 1977. Petitioner has proffered the affidavit of yet another inmate, who avers that he fell on the same spot in the latter part of 1978 and broke his wrist. Petitioner has submitted affidavits stating that the condition exists and that he fell and hurt himself. Petitioner seeks $500,000 in compensatory damages.

In their motion to dismiss, respondents submit that petitioner's complaint is devoid of constitutional significance. Respondents say that the petitioner's complaint states at most a claim of mere negligence, which is not actionable under 42 U.S.C. § 1983.

Petitioner has moved this court for summary judgment against respondents. This court now addresses the issues raised by petitioner Snyder's complaint.

## II.

### A.

The case at bar requires this court to ascertain the appropriate standard of conduct for state prison officials under the

Eighth Amendment, the breach of which will lead to civil liability under Section 1983. In discussing Section 1983 liability for violation of a constitutional right, it is important to keep the *statutory* standard of conduct under the statute 42 U.S.C. § 1983 analytically separate from the *constitutional* standard of conduct.[1]

Section 1983 provides in pertinent part that "[e]very person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (1974).[2] The statute does not expressly limit itself to intentional or reckless actions or failures to act, for no standard of conduct is expressly set forth in the statute; therefore, a plain reading of the statute's language leads one to the conclusion that negligent conduct by a state official acting under color of state law, when such conduct leads to the deprivation of a constitutional right, is sufficient to give the aggrieved plaintiff a cause of action in federal court.

▇▇▇ Judicial interpretations of Section 1983 support the conclusion that negligence is enough to state a federal cause of action.[3] *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the landmark decision which imparted the modern vitality to Section 1983, contains significant language to the effect that the statute does not speak only to intentional misconduct. In contrasting the civil provisions of Section 1983 with the criminal provisions of the Civil Rights Act of 1866, the *Monroe* Court wrote:

1. *See* Comment, *Actionability of Negligence Under Section 1983 and the Eighth Amendment*, 127 U.Penn.L.Rev. 533 (1978). *See also Jones v. McElroy*, 429 F.Supp. 848, 862 (E.D. Pa.1977).

2. The statute was originally enacted as part of the Civil Rights Act of 1871 to enforce the Fourteenth Amendment's guarantees by providing a cause of action in federal court. *See generally* Note, *Developments in the Law— Section 1983 and Federalism*, 90 Harv.L.Rev. 1133 (1977).

3. It is important to remember that the effect of 42 U.S.C. § 1983 is to give a plaintiff a cause of action in *federal*, as opposed to state, court. State courts are competent to enforce constitutional guarantees, but Section 1983 arose from a Congressional concern that state courts were not as vigorous as they might be in giving effect to the provisions of the Constitution designed to foster human rights.

In [*Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)] we dealt with a statute that imposed criminal penalties for acts "wilfully" done. We construed that word in its setting to mean the doing of an act with "a specific intent to deprive a person of a federal right." . . . We do not think that gloss should be placed on [Section 1983] which we have here. *The word "wilfully" does not appear in [Section 1983].* Moreover, [Section 1983] provides a civil remedy, while in the *Screws* case we dealt with a criminal law . . . . *Section [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.*

*Id.* at 187, 81 S.Ct. at 484. (Emphasis added.)

Thus, as characterized by the Court in *Jones v. McElroy*, 429 F.Supp. 848 (E.D.Pa.1977), *Monroe* held that "a specific intent . . . to violate a constitutional right is not required in a § 1983 action; [*Monroe*] did not address the question whether a general intent to commit certain acts—without regard to whether those acts were specifically intended to violate an individual's civil rights—was needed in a § 1983 action." *Id.* at 862. While some courts have refused to construe the *Monroe* language broadly with respect to whether negligence is actionable under Section 1983, *see, e. g., Bonner v. Coughlin*, 545 F.2d 565 (7th Cir. 1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978), other courts have endorsed a liberal construction of the *Monroe* opinion. *See, e. g. Carter v. Carlson*, 144 U.S.App.D.C. 388, 395, 447 F.2d 358, 365 (1971), *rev'd on other grounds sub nom., District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

The Circuit Court of Appeals for the Fourth Circuit has broadly interpreted the holding in *Monroe*. In *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir. 1970), the court held that, if intent was required under Section

1983, it would be supplied for federal purposes by gross and culpable negligence. The court stated that "constricting the possibility of recovery under section 1983 is consistent with neither the plain language of the act nor the mandate to read it 'against the background of tort liability that makes a man responsible for the natural consequences of his actions.' " *Id.* at 1233, *citing Monroe v. Pape, supra*. The Fourth Circuit has further written that "a section 1983 action may be based on negligence when it leads to a deprivation of rights." *McCray v. Maryland*, 456 F.2d 1, 5 (4th Cir. 1972), *citing Jenkins v. Averett, supra; Carter v. Carlson, supra; Whirl v. Kern*, 407 F.2d 781 (5th Cir.), *cert. denied*, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969). This court therefore considers it established that allegations of negligence are sufficient to state a cause of action in federal court under 42 U.S.C. § 1983, when a constitutional right is abridged. However, before Section 1983 can be invoked and before the statutory standard of culpability becomes relevant, the civil rights plaintiff must first demonstrate that his constitutional rights have been violated.

### B.

■ Accordingly, the first question for this court is whether petitioner Snyder has alleged facts sufficient on their face to show the deprivation of a constitutional right.[4] Unless petitioner has suffered the deprivation of a constitutional right, the respondents' state of mind is immaterial, although the respondents' state of mind may be relevant on the issue of whether a constitutional violation has occurred in the first place. *Baker v. McCollan*, —— U.S. ——, ——, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). This court must decide whether respondents have abridged petitioner's rights as secured by the Eighth Amendment, which is the constitutional provision that petitioner relies on for his right to relief

---

4. For the purpose of ruling on the respondents' motion to dismiss, this court accepts as true those facts that petitioner has alleged. *Jenkins*

*v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

based on allegations that respondents were grossly negligent.[5]

■ While the Eighth Amendment was originally enacted to prohibit torture and other barbarous methods of punishment, modern case law has established that the Amendment goes beyond proscription of physically barbarous punishment. *See Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Eighth Amendment prohibits punishments which are repugnant to "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). Punishment "must not involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). State prisoners have long resorted to the Eighth Amendment and Section 1983 as a means of challenging the conditions of their confinement. In discussing the conditions constitutionally permissible in solitary confinement, the United States Court of Appeals for the Fourth Circuit has held in a seminal case that state treatment of prisoners can be neither barbarous nor shocking to the conscience. *Sweet v. South Carolina Department of Corrections*, 529 F.2d 854 (4th Cir. 1975). Only when prison conditions become so deplorable as to fall within the range of subhuman treatment can a federal court intervene. Merely undesirable conditions or practices do not give rise to a federal cause of action.

■ In ruling on the sufficiency of petitioner Snyder's allegations, this court is not bound by petitioner's use of the conclusory term "gross negligence"; rather, this court looks to the legal sufficiency of the facts pled by petitioner. In scrutinizing petitioner's claim and the nature of the harm he suffered, this court is simply unable to find that petitioner has been a victim of barbarous, indecent, subhuman, or wanton treatment. This court does not intend to belittle petitioner's injury, for the results of only a minor fall can be painful and debilitating; yet, the respondents' inaction in failing to repair a leaking dishwasher—regardless of whether such inaction might be characterized under state law as "negligent" or even "grossly negligent"— cannot be said as a matter of federal law to be conduct shocking to the conscience or repugnant to civilized standards of a maturing society.

Furthermore, petitioner Snyder's alleged injury is not of the type where the risk of harm was increased substantially because he was a state prisoner. *See* Comment, *Actionability of Negligence Under Section 1983 and the Eighth Amendment*, 127 U.Penn.L.Rev. 533, 577 (1978). A slip and fall injury is not comparable to a prison-related injury, such as harm caused by the assault of fellow inmates, for example. In *Woodhous v. Virginia*, 487 F.2d 889 (4th Cir. 1973), the court addressed the issue of whether a prisoner was subjected to cruel and unusual punishment because the state failed to protect him from violence and sexual assaults by other prisoners. The court, by holding that state prison officials must exercise reasonable care to prevent inmate assaults, strongly implied that negligence would be sufficient to state a cause of action under Section 1983 for this particular type of harm. *See also Van Horn v. Lukhard*, 392 F.Supp. 384 (E.D.Va.1975). However, the slip and fall incident of which

---

**5.** Respondents have based their motion to dismiss on the bare assertion that mere negligence is not actionable under Section 1983, but the rule is not clear, for the Supreme Court stated in *Baker* that "the question whether an allegation of simple negligence is sufficient to state a cause of action under § 1983 is more elusive than it appears at first blush." —— U.S. at ——, 99 S.Ct. at 2692. Having recognized the difficulty of the problem, the Court decided the *Baker* case on the grounds that the plaintiff had not suffered the loss of a constitutional right and wrote that "[w]e . . . defer once again consideration of the question whether simple negligence can give rise to § 1983 liability." *Id. See Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), where the Court granted certiorari to decide whether negligence can be the basis for Section 1983 award of damages, but avoided the negligence issue and decided the case on immunity principles. *See also* Huntington, *Section 1983 Liability for Negligence*, 58 Neb.L.Rev. 271 (1978).

petitioner complains could just have easily occurred in any other state-owned facility, such as a public school cafeteria kitchen.

The mere fortuity that the accident occurred in a prison does not vest petitioner Snyder with a right to federal adjudication of what is essentially a state common law tort claim, and petitioner's allegation of a slip and fall incident makes out nothing more than a common law tort. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan, supra,* —— U.S. at ——, 99 S.Ct. at 2696. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble, supra,* 429 U.S. at 106, 97 S.Ct. at 292. The simple fact that a prisoner has suffered harm does not without more raise a constitutional issue, for "[t]he fact that a prisoner is assaulted, injured, or even murdered by state officials does not *necessarily* mean that he is deprived of any right protected or secured by the Constitution or laws of the United States." *Screws v. United States,* 325 U.S. 91, 108–09, 65 S.Ct. 1031, 1039, 89 L.Ed. 1495 (1945), *quoted in Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). (Emphasis added.)

Therefore, this court is of the opinion that petitioner Snyder has failed to state a claim of constitutional significance worthy of federal intervention into what is essentially a matter of state common law torts.

This court does not find its conclusion barred by any of the relevant case law in this judicial circuit. In *Jenkins v. Averett, supra,* the court dealt with a claim in which the plaintiff had been shot by a police offi-

cer in a grossly negligent manner. The court held that, with respect to the Fourth Amendment claim of unreasonable interference by a police officer, if intent was required for Section 1983 liability it would be supplied for federal purposes by gross and culpable negligence. *See Street v. Surdyka,* 492 F.2d 368 (4th Cir. 1974) (court in dealing with a Fourth Amendment improper arrest issue held that it was not reversible error to instruct the jury that "mere negligence" could not sustain the civil rights claim). *McCray v. Maryland, supra,* dealt with a prisoner's constitutional right of access to the courts and concluded that negligence was sufficient to state a cause of action under Section 1983 if the prisoner suffered a deprivation of the right.

However, neither *Jenkins* nor *McCray* dealt with an Eighth Amendment claim, and the Supreme Court has said that the issue of whether allegations of negligence state a Section 1983 claim "may well not be susceptible of a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a § 1983 action." *Baker v. McCollan, supra,* —— U.S. at ——, 99 S.Ct. at 2692. *See also* Comment, *Actionability of Negligence Under Section 1983 and the Eighth Amendment, supra* ; Kirkpatrick, *Defining a Constitutional Tort Under Section 1983: The State-of-Mind Requirement,* 46 Univ. of Cin.L.Rev. 45 (1977). Therefore, this court finds the two cases readily distinguishable on the grounds that a different constitutional right was involved.[6] The Eighth Amendment cannot be taken in conjunction with 42 U.S.C. § 1983 to provide a federal forum for adjudication of a state prisoner's common law tort claims: the *Jenkins* court specifically rejected the spectre that there was a constitutional remedy for all state-perpetrated negligence.

---

6. The appropriate duty of care may well vary for different claims within the same constitutional guarantee. *See* Comment, *Actionability of Negligence Under Section 1983 and the Eighth Amendment, supra.* That one standard of conduct is inappropriate for all types of Eighth Amendment claims is implicit in this court's ruling in the case *sub judice,* for this court distinguishes the Eighth Amendment

holding in *Woodhous v. Virginia,* 487 F.2d 889 (4th Cir. 1973) (holding that state officials must exercise reasonable care to prevent inmate assaults), on the grounds that *Woodhous* dealt with a prison-related injury while the slip and fall case currently before this court does not present an injury peculiarly related to prison life and incarceration.

### III.

This court is aware that state prisoners' *pro se* civil rights complaints are to be liberally construed, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Even applying this stringent standard, this court finds that petitioner Snyder's complaint does not state a constitutional claim. Respondents' motion to dismiss will be granted.

The Clerk of this court is directed to send certified copies of this Memorandum Opinion to petitioner and to counsel for respondents.